UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DARLENE DEATS,

                              Plaintiff,

                                                         Case # 10-CV-6473-FPG

v.
                                                         DECISION AND ORDER

MONROE COUNTY,
MONROE COUNTY DISTRICT ATTORNEY
MICHAEL GREEN,
ASSISTANT MONROE COUNTY DISTRICT
ATTORNEYS TIMOTHY L. PROSPERI and
JENNIFER A. WHITMAN, Individually and in their
official capacities,

                              Defendants.

_____

        After being acquitted of multiple charges in a state court trial, Plaintiff Darlene Deats

brings this action against former Monroe County District Attorney Michael Green, Assistant

District Attorney Timothy Prosperi and Assistant District Attorney Jennifer Whitman who

conducted or oversaw her prosecution, along with their employer, the County of Monroe.   The

Complaint alleges that the Defendants maliciously prosecuted her in the absence of probable

cause, and that the County of Monroe had a policy of conducting unwarranted prosecutions.   The

Defendants have moved for judgment on the pleadings, primarily arguing that the prosecutors are

entitled to absolute immunity.   Because the prosecutors are immune from suit regarding the

majority of Plaintiff's claims, and because the remaining allegations fail to state a claim upon

which relief could be granted, the Defendant's' motion is granted, and this case is dismissed with

prejudice.

BACKGROUND

Plaintiff Darlene Deats worked for Biomedical Tissue Services ("BTS") from October 2004 through September 2009.  In September 2009, Plaintiff received certification from the American Association of Tissue Banks as a tissue recovery specialist, which, in practical terms, involves recovering tissue from cadavers.  As part of her employment with BTS, the Plaintiff would be notified when tissue or bone donors became available and would proceed to Rochester area funeral homes to collect the tissue or bones.  The recovered tissue or bones were frozen and forwarded to a location in New Jersey.  The Plaintiff did not have contact with the donor's family, nor did she know any information regarding the individual donors.

In approximately 2005, the Kings County District Attorney's Office, the New York City Police Department, and the United States Food and Drug Administration's Office of Criminal Investigations began investigating BTS.

Based upon this investigation, in February 2006 the Kings County District Attorney's Office prosecuted four individuals associated with BTS for participating in a scheme to steal tissue from bodies of individuals who had never provided consent to be tissue donors, and afterwards, they sold the harvested tissue to transplant companies.  The Plaintiff was not named in that prosecution.

In March 2006, the Monroe County District Attorney's Office, relying upon the aforementioned investigation, proceeded to obtain an indictment charging the Plaintiff with 23 counts of body stealing in violation of Public Health Law § 4216; 23 counts of opening graves in violation of Public Health Law § 4218; 23 counts of unlawful dissection in violation of Public Health Law § 4210-a; 12 counts of forgery in the second degree; and 12 counts of falsifying business records in the first degree.

The indictment alleged that the Plaintiff knowingly recovered human tissue and bones from cadavers without the consent of the deceased or their next of kin. Following a bench trial before Monroe County Court Judge John Connell, the Plaintiff was found not guilty on all counts.

Following her acquittal, the Plaintiff commenced this action, alleging[1] causes of action under Title 42, United States Code, Section 1983 for malicious prosecution and false arrest in violation of her Fourth and Fourteenth Amendment rights under the Constitution; a cause of action under § 1983 for a violation of Plaintiff's due process rights under the Fourteenth amendment; a supervisory liability claim under § 1983 against District Attorney Michael Green; and a claim against Monroe County under § 1983 for maintaining an unconstitutional official custom, practice, or policy by prosecuting individuals when no basis in law or fact existed to do so.

Presently before the Court is the Defendants Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c), which primarily argues that the individual prosecutors are absolutely immune from suit. Dkt. # 33. The Plaintiff has responded in opposition to the motion, and the Defendants have filed their reply. Dkt. ## 35, 36.

---

[1] The Complaint in this case was filed by the Plaintiff's then-counsel, Christina Agola, who was subsequently suspended from the practice of law by the Appellate Division, Fourth Department; by this Court; and by the United States Court of Appeals for the Second Circuit. Although the Complaint contains four causes of action, they are inexplicably delineated in the Complaint as the first, second, fourth, and sixth causes of action. There is no third or fifth cause of action listed in the Complaint.

DISCUSSION

I.    Motions for Judgment on the Pleadings

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is judged by the same standard applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Morris v. Schroder Capital Mgmt. Int'l*, 445 F.3d 525, 529 (2d Cir. 2006).  In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiffs' favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

II.    Absolute Immunity

The Defendants argue that the Plaintiff's Complaint must be dismissed because they are entitled to absolute immunity.  The Supreme Court has held that when prosecutors perform traditional prosecutorial activities that are "intimately associated with the judicial phase of the criminal process," they are entitled to absolute immunity. *Imbler v. Patchman*, 424 U.S. 409, 430 (1976).  In determining whether absolute prosecutorial immunity attaches to a particular action, courts apply a "functional approach." *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995).  "Prosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all

acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.'" *Id.* at 661 (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)).

The Supreme Court has further explained that a prosecutor's functions preliminary to the initiation of proceedings include "whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present." *Imbler*, 424 U.S. at 431 n. 33. Further, the functional test for absolute immunity is an objective test, meaning it does not depend upon the state actor's subjective intent. *Dory*, 25 F.3d at 83; *see also Burns v. Reed*, 500 U.S. 478, 487–88 (1991) (allegations that prosecutor "deliberately misled the Court" during preliminary hearing were deemed irrelevant where the prosecutor's objective act—presenting evidence at the hearing—enjoyed absolute immunity).

As summarized by her counsel, the gist of the Plaintiff's claims are that "the Monroe County District Attorney's Office, through Michael Green, Timothy Prosperi, and Jennifer Whitman, caused an indictment to be issued and a prosecution to be maintained against Plaintiff despite possessing evidence that she did not knowingly or intentionally engage in the fraudulent conduct surrounding the consent of donors." Dkt. # 35, at 4.

While acknowledging that the doctrine of absolute immunity exists, the Plaintiff claims that Defendants "Green, Prosperi and Whitman are not entitled to absolute immunity from claims against them in their individual capacities because probable cause was never properly obtained. At no stage during the initiation of the proceedings (ADA Whitman), during the maintaining of the criminal proceedings (ADA Prosperi) and during the overall supervision of this highly publicized case (DA Green) was there any evidence whatsoever that plaintiff had the requisite criminal intent to sustain the charges." Dkt. # 35, at 7. Plaintiff further argues that absolute

5

immunity should not apply to these Defendants because they abused their prosecutorial power by "marshaling the investigative and charging powers of a grand jury and the district attorney's office when the prosecutors have affirmative evidence that the plaintiff was actually innocent." *Id*. Plaintiff does not cite a single case in support of these arguments.

The Plaintiff is incorrect. Even if her allegations are true, the individual defendants are entitled to absolute immunity, as all of the complained of acts occurred during the Defendants' exercise of their duties as prosecutors. The Second Circuit has instructed that

> a prosecutor is insulated from liability where his actions directly concern the pre-trial or trial phases of a case. For example, the swearing of warrants to insure a witness's attendance at trial, the falsification of evidence and the coercion of witnesses, or the failure to drop charges until immediately before trial, have been held to be prosecutorial activities for which absolute immunity applies. Similarly, because a prosecutor is acting as an advocate in a judicial proceeding, the solicitation and subornation of perjured testimony, the withholding of evidence, or the introduction of illegally-seized evidence at trial does not create liability in damages. The rationale for this approach is sound, for these protected activities, while deplorable, involve decisions of judgment affecting the course of a prosecution.

*Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981) (internal citations omitted).

Put another way, the law is clear that "a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution ... is immune from a civil suit for damages" under both federal and state law. *Shmueli v. City of N.Y.,* 424 F.3d 231, 236, 238 (2d Cir. 2005) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 410 (1976)). Further, "a prosecutor's motivation, and whether preferable alternatives to the actions taken were available, are irrelevant." *Parkinson v. Cozzolino*. 238 F.3d 145, 150 (2d Cir. 2001) (internal quotations and citations omitted).

Save one potential exception regarding a press release[2], the Plaintiff here complains only about actions that each prosecutor took in his or her "role as an advocate." *Hill,* 45 F.3d at 662. Most of Plaintiff's allegations relate to the prosecutors' alleged failure to investigate evidence that would have allegedly exculpated her, but such allegations are nothing more than a challenge to the prosecutors' "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial," acts for which they are absolutely immune. *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993); *see also Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir. 1994) (holding that absolute immunity protects prosecutors who conspire to present false evidence at trial).

Moreover, as long as the nature of the complained of actions are prosecutorial, "absolute immunity applies to protect the prosecutor even in the face of a complaint's allegation of malicious or corrupt intent behind the acts." *Id.; see also Buckley,* 509 U.S. at 271–72 (noting that "harm that the conduct may have caused or the question whether it was lawful" is irrelevant to whether absolute immunity applies); *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1150 (2d Cir. 1995) ("[T]he extent of [prosecutorial] immunity always depends upon the nature of the activity in question, and not upon how wrongly the particular actors may have performed that activity in a specific instance."). As a result, the claims against ADA Whitman, ADA Prosperi, and DA Green are dismissed, with the exception of the "press release" claim, which is discussed below.

---

[2] Statements to the press are not inherently prosecutorial in nature, and are therefore not protected by absolute immunity, but by qualified, good-faith immunity. *See,* e.g., *Buckley v. Fitzsimmons,* 509 U.S. 259, 277–78 (1993); *Powers v. Coe,* 728 F.2d 97, 103 (2nd Cir. 1984); *Jovanovic v. City of New York,* No. 04 Civ. 8437(PAC), 2006 WL 2411541, at *16 (S.D.N.Y. Aug. 17, 2006).

III.    The Issuance of a Press Release

In a perfunctory, one sentence argument, Plaintiff argues that even if the Court finds that absolute immunity applies, that "the case against DA Green should be allowed to proceed because immunity does not attach to his press releases and media grandstanding associated with this high profile case." Dkt. # 35, at 7.   There is no further elaboration on this argument and, much like the prior argument, no case is cited in support of this proposition.   The lack of any form of a developed argument on this point would justify a determination by this Court to not address this claim, and deem it waived.   *See State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004) (when a party fails to adequately present arguments in its brief, the arguments are abandoned).

Nevertheless, when addressed on the merits, the claim fails.   The only reference to a press release in the Complaint is found in paragraphs 47 through 49.   Those paragraphs, under the heading "The Attendant Media Circus Surrounding the Body Stealing Case" allege that:

47.    A myriad of press articles surrounded this sensationalistic "body stealing" case at a time in which DA Green was seeking re-election to his office.

48.    In particular, the Monroe County District Attorney's Office issued a press release that stated in relevant part:

"The charges in this indictment regarding Biomedical Tissue Services, Inc. employees Kirssy (sic) Knapp aka Kirssy (sic) V. Medos, Darlene R. Deats, Kevin I. Vickers and Nicholas A. Sloyer alleges (sic) they signed as witnesses Biomedical Tissue Services Consent Forms, when in fact, they had never witnessed or obtained consent.   They are also charged with Body Stealing, Opening Graves and Unlawful Dissection as a result of the tissue and bone recovery procedures in which they each are alleged to have participated in."

49.    The defendants, and each of them, knew that this was a false statement as it pertained to Deats because the FDA & Brooklyn

investigations yielded that Deats was not responsible for obtaining consent from any donor's next of kin and operated under the direction of her supervisor.

These allegations fail to state a claim. First, the Plaintiff does not allege which of her rights were violated by this press release, or how they were violated. Second, the Complaint does not allege that any of the named Defendants were involved in the issuance of the press release. Rather, it alleges generally that the press release was issued by the "Monroe County District Attorney's Office," who is not a defendant in this case. Without alleging any wrongdoing by a specific individual, these generic allegations cannot form a claim against an individual Defendant. Further, to the extent that the Plaintiff is attempting to argue that Defendant Green, as District Attorney, was somehow responsible for the press release because he supervised the office, that claim similarly fails. It is well settled that there is no *respondeat superior* liability in § 1983 actions, and that personal involvement is a prerequisite for the assessment of damages in a § 1983 action against a supervisory official in his individual capacity. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010).

Third, the Complaint does not allege that the press release is an inaccurate statement of what the grand jury indictment charged. Rather, consistent with the remainder of the Complaint, it instead alleges that the prosecutors knew or should have known that the grand jury reached the wrong conclusion. Even putting that aside, if the Complaint had alleged action on behalf of a specific Defendant, and had properly alleged that the actual statement made in the press release was false, it is well settled that false defamatory statements by a state actor "will not support a [Section] 1983 claim if the only injury is to the plaintiff's reputation." *Hall v. Marshall*, 479 F. Supp. 2d 304, 314 (E.D.N.Y. 2007). Here, the only damages alleged – which are listed generically for the entirety of the Complaint – are those that fall under the category of reputation

damages.  *See* Dkt. # 1, ¶ 76.  For all of these reasons, to the extent that the Complaint alleges

misconduct through the issuance of a press release, those claims are dismissed.

IV.    <u>Municipal Liability Claims</u>

Plaintiff asserts a *Monell* claim against the County, alleging that she was prosecuted

because of "an unconstitutional official custom, practice, or policy, by prosecuting those

individuals were (sic) there was no basis in law or fact to do so" and that they "failed to provide

or provided grossly inadequate training and supervision regarding the obligation to determine

whether there was probable cause to prosecute an individual despite actual or constructive

knowledge that the failure to provide such training, supervision, and discipline had led to or was

likely to lead to the constitutional violations described herein."   Dkt. # 1, ¶ 100, 102.

"A *Monell* claim—arising from the Supreme Court case of *Monell v. Department of*

*Social Services,* 436 U.S. 658 (1978)—is a way to hold a municipality liable under Section 1983

for the conduct of its employees." *Pugh v. City of New York,* 2002 WL 398804(ILG), at *2

(E.D.N.Y. Jan. 15, 2002).  A municipality may be liable under § 1983 when, by implementation

of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by

that [municipality's] officers" or through practices that are so "permanent and well settled" as to

constitute governmental "custom," it deprives the plaintiff of a constitutional right. *Monell,* 436

U.S. at 690.  A municipality may also be liable "under the so-called 'failure to train' theory ...

where the failure to train amounts to deliberate indifference to the rights of persons with whom

the [agents of the municipality] come into contact." *Jenkins,* 478 F.3d at 94 (quoting *City of*

*Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989).

For the most part, the allegations in the Plaintiff's Complaint consist only of conclusory allegations devoid of factual support[3]. Such a "naked assertion[ ] devoid of further factual enhancement" is insufficient to state a plausible claim. *Iqbal*, 556 U.S. at 678; *see also Triano v. Town of Harrison, N.Y.,* 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) ("[M]ere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details.") Further, a *Monell* claim "cannot be grounded solely on the conclusory allegations of the plaintiff." *Santos v. New York City,* 847 F. Supp. 2d. 573, 577 (S.D.N.Y. 2012).

Regardless, all of the individual claims against the Defendants in this case have already been dismissed for failure to state a claim upon which relief could be granted. Therefore, the Defendants' acts could not give rise to any derivative liability on the part of the County, as the Plaintiffs have failed to establish the Defendants' liability for deprivation of any of Plaintiffs' rights under either 42 U.S.C. §§ 1983 or 1988. *See, e.g., Galliotti v. Green,* No. 07-CV-6601, 2011 WL 2938449, at *8 (W.D.N.Y. July 19, 2011). As a result, the Plaintiff's *Monell* claim against the County is dismissed.

---

[3] The only "factual enhancement" to Plaintiff's Complaint does not support her claim. In paragraph 75 of the Complaint, the Plaintiff alleges that "an indictment was returned on May 20th, 2005 against the Galietti (sic) brothers. Each Galietti (sic) brother was charged with one count of Grand Larceny, one court of Falsifying Business Records, one count of Insurance Fraud in the 5th degree, one count of Insurance Fraud in the 4th degree, and one count of Petit Larceny. Thereafter, a trial was scheduled for November 2005. On November 22, 2005, each and every charge against the Galietti (sic) brothers were dismissed by Judge Schwartz on the merits following trial because the DA's office had absolutely no evidence on any of the charges it levied against the Galliottis (sic). The Galietti (sic) brothers then filed a federal lawsuit claiming malicious prosecution due to the failure, inter alia, of the DA's office to complete an adequate investigation against the Galliotis (sic) who had no prior criminal history." Importantly, that case was dismissed in its entirety by United States District Judge Michael A. Telesca, and therefore provides no basis to allege a practice or policy claim. *See Galliotti v. Green,* No. 07-CV-6601, 2011 WL 2938449 (W.D.N.Y. July 19, 2011).

<u>CONCLUSION</u>

For all of the foregoing reasons, the Plaintiffs' Complaint fails to state a claim upon which relief could be granted, and the Defendants' Motion for Judgment on the Pleadings (Dkt. # 33) is therefore GRANTED, and this action is dismissed with prejudice.   The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

DATED:        December 1, 2014
              Rochester, New York

              _____
              HON. FRANK P. GERACI, JR.
              United States District Judge

12